# McMullen's Appeal.

A married woman, owning separate real estate, contracted with mechanics to make repairs and improvements on the same, and while the work was in progress, being unable to pay the workmen, she borrowed money for that purpose, and so applied it. She afterwards died without having repaid the loan. Upon the distribution of her separate estate by an auditor: *Held*, that in the absence of evidence showing affirmatively that such repairs were *necessary*, and a finding of the auditor to that effect, the party who loaned the money could not maintain a claim to be repaid the same out of the fund for distribution.

June 2, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Cumberland county:* Of May Term, 1884, No. 20.

This was an appeal by Elizabeth McMullen from a decree in the matter of the distribution of the estate of Mrs. Mary A. McMullen, deceased, in the hands of her administrator.

Before the auditor appointed to report distribution (J. M. Weakley, Esq.), Elizabeth McMullen presented a claim for $318.42, with interest, being the amount of a loan by her to the decedent, evidenced by a judgment note signed by the decedent, then a married woman, and by her husband, William McMullen, upon which judgment had been entered to August Term, 1873. Elizabeth McMullen based her claim not upon the note or judgment, but on the fact, which was proved, and so found by the auditor, that the money was loaned by claimant to decedent for the express purpose of repairing and improving her separate real estate, and was in fact used for that purpose.

The auditor allowed the claim, saying in his report:

" It has been held in several cases decided by the Supreme Court that a married woman's separate estate is liable for her debts incurred for necessaries for the support of her family and that actions for the collection of such debts must be brought on the original contract, and cannot be founded on a note or other obligation given in liquidation of such contracts. It has also been settled beyond dispute that her separate estate is liable for debts contracted for repairs and improvements to it. The present claim is somewhat beyond the range of these decisions. It raises the question—Can a married woman render her separate estate liable for a contract for borrowed money which was designed to be used to repair and improve her separate property and which was actually used for that purpose. . . . . . It seems to the auditor that the words of the Act of 1848, from which is inferred the power of a married woman to contract with mechanics and material men for the repairs or improvement of her separate property, ought to sustain the inference that she is empowered to contract for the money required to pay for the labor and material furnished her, and that when it is clear that money is borrowed for that purpose and so applied, her separate estate should be liable. It is hard to see how such a construction of the Act of 1848 would endanger her estate, more than the power to make the direct contract for the improvement does, and it certainly would in many instances save the cost and annoyance of collecting the original contracts by suit. The evidence in this case shows that the carpenters who were at work at the house ' were displeased and wanted money,' when Mrs. McMullen obtained this loan from her step-daughter and paid them, and this is doubtless a fair illustration of many cases. To hold that a married woman may not borrow money to pay a debt that she has the legal right to incur, is indirectly curtailing the exercise of that right, and may very often cause trouble

and expense to her creditors.   With these views the auditor believes the claim of Elizabeth McMullen should be allowed."

Exceptions filed to the allowance of said claim, by the guardian of a minor interested in the distribution, were sustained by the court, HERMAN, P. J., saying in an opinion filed :

"The auditor allowed this claim against the separate estate of the decedent, who was a married woman, not on the judg ment note given for the borrowed money nor on the judgment entered thereon, but on the ground that she borrowed the money from the claimant for the purpose of using it in the repair and improvement of her separate real estate, and that the money was actually applied to that purpose.   This is not enough to bind the separate estate of a married woman for money borrowed for the improvement or repair of her estate. It must not only appear that the money was borrowed for that purpose and so applied, but that the repairs or improvements thus made were *necessary* for the preservation or enjoyment of her property.   In no case has a married woman's separate property been held liable under the Act of 1848, for work or materials furnished and used in the improvement or repair of her real estate, without the fact being established by evidence other than her own opinion therein, that such improvements or repairs were *necessary*.   The last reported case before our Supreme Court on this subject is Guyer *v.* Harrison, 7 Out. 473, in which it is said, by Mr. Justice TRUNKEY who delivers the opinion of the court, that : 'It is not enough to charge a married woman's property, or to render her person- ally liable, to lend her money for the purpose of making repairs, or to furnish work and materials for improvements, it must also affirmatively appear that the money was so applied, or that the improvements were actually made, and that the same were necessary for the preservation or enjoyment of her property.   Her power to contract is limited by the require- ments of necessity;' and again : 'The tribunal for determi- nation of the facts must find from evidence that improvements were actually made, and were necessary, to justify enforcing her alleged contract.   The statute does not intend that a mar- ried woman may contract debts to her injury, under a mistaken opinion, or under a pretext that repairs or improvements of her property are necessary.   It is essential to the plaintiff's case, to show that her weakness or credulity has not been im- posed upon, in the ordering of some useless alteration or building.'   Nothing more need be said, to show the error com- mitted by the auditor in allowing this claim of Elizabeth McMullen to participate in the distribution, for it is not found as a fact, and indeed no evidence has been produced to justify such finding, that the repairs or improvements paid for with

the money borrowed, were necessary for the preservation of the property. The claim must therefore be rejected."

Elizabeth McMullen took this appeal, assigning for error the action of the court in sustaining the exceptions to the allowance of her claim, as stated in the above opinion.

*A. B. Sharpe*, for the appellant.—The question as to the *necessity* of the repairs was not disputed before the auditor. The evidence showed that Mrs. McMullen attended to her own business, her husband being decrepit and incapacitated; that she contracted for the repairs; while they were in progress she could not pay the workmen, who threatened to leave the job unfinished; she then borrowed the money from the appellant, her step-daughter, for the purpose of paying the workmen, and used it for that purpose. The auditor found as a fact that "the carpenters who were at work at the house were displeased and wanted money, when Mrs. McMullen obtained this loan from her step-daughter and paid them." This is ample prima facie evidence of necessity, in fact a very pressing necessity, and it was not contradicted or objected to. The language of this court in a weaker case than this, is applicable here, viz.: "As to the exception to the McAdams claim, that it does not set forth that the work was *necessary* for the improvement of her separate estate, we have but to say, that had the exception been taken by Mrs. Hale at the proper time, the want of the word *necessary* would have been fatal to the claim; not so, however, when the objection comes from a third person, and after judgment on a scire facias:" Appeal of the Germania Savings Bank, 14 Norris 333. See also Lippincott *v.* Leeds, 27 P. F. S. 420; Lippincott *v.* Hopkins, 7 P. F. S. 328; Kuhns *v.* Turney, 6 Norris 497. The object of the Act of 1848 is to protect married women in the enjoyment of their separate estate, and it should receive a liberal construction to that end; but where there is no suspicion of imposition, and where the necessity for the repair of real estate arises out of the facts, as in this case, it is wholly within the spirit of the Act that a married woman shall have the incidental power to bind herself for the cost of such repair, whether directly to the mechanics, or indirectly to a party who loans her money to pay the mechanics, which money is actually so applied: Lippincott *v.* Leeds, supra. The tendency of the recent decisions is to hold married women to the same good faith in their transactions as others are bound to observe, and not to construe a just Act, intended for their benefit, "so as to license a class of female pirates to take advantage of those who befriend them when in need." In this case the married woman herself never in her lifetime repu-

diated her just obligation, and her representatives cannot now do so, in opposition to the finding of the auditor, as a matter of fact and law that the obligation is binding on the decedent's separate estate.

*J. W. Wetzel,* for the appellee.—It has never been decided in this state that a married woman has power to bind herself, under any circumstances, for a *loan* of money, borrowed to pay for repairs to her separate real estate and so applied. But even if she could so bind herself in any case, it will not be contended that she has a greater latitude to borrow than she has to contract directly with the material man or mechanic. And it has been consistently held from the earliest decisions under the Act of 1848 down to the latest case, of Needham *v.* Woollens, 14 W. N. C. 525, that the party seeking to hold her liable for such repairs must show affirmatively that such repairs were *necessary.* There was no evidence whatever in this case of any necessity to *begin* the repairs and improvements, and the alleged necessity to borrow money to *complete* them is an afterthought, and does not come up to the standard of proof required. The decree of the court below was therefore right, and the argument as to the injustice of the case on its merits has no application.

The opinion of the court was filed October 6th, 1884.

PER CURIAM. It is settled law that a married woman is liable for repairs to her separate estate, made at her request, and necessary for its preservation and enjoyment. A married woman is still under a general legal inability to contract. To make her liable, the case must be shown to be within the exceptions to which her general disability does not apply.

The claim here in contention is on a note given by a married woman for money borrowed. The validity of the claim is sought to be sustained by showing she borrowed the money to pay for repairs and improvements to her real estate, and that it was paid to the mechanics who made them. It is, however, not found as a fact that the repairs or improvements were necessary. In the absence of such finding we cannot assume the existence of that fact. If not necessary she was not liable therefor.

The learned judge well declares no evidence was produced to justify a finding that the repairs or improvements were necessary for the preservation of the property. Without proving some necessity sufficient to protect her against imposition and folly, she did not become legally liable for the payment of money thus borrowed.

Decree affirmed and appeal dismissed at the costs of the appellant.